In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**No. 09-17-00184-CV**
_____


**TASHA ROSE MARSH, Appellant**


**V.**


**ROBERT CHRISTOPHER MARSH, Appellee**


**On Appeal from the 258th District Court**
**San Jacinto County, Texas**
**Trial Cause No. DV13,774**


**MEMORANDUM OPINION**

This is an appeal from a final decree of divorce in which the appellant challenges the trial court's decisions adjudicating issues over the custody and

conservatorship of the couple's seven children.[1] Tasha Rose Marsh[2] filed a brief arguing the trial court erred in five ways: (1) by allowing Robert Christopher Marsh to move the couple's children to Florida; (2) by weighing, in Robert's favor, testimony showing that she engaged in abusive behavior toward her children; (3) by appointing Robert as the parent with the right to designate where the couple's children would live; (4) by failing to interview the couple's fourth child in chambers when the court interviewed the couple's three oldest children; and (5) by issuing conservatorship orders that deviated from the rights of possession typically awarded by family law judges in standard possession orders. We conclude that the issues Tasha raises in her appeal have no merit, so the trial court's judgment is affirmed.

Background

Tasha and Robert married in 1998. In 2016, Tasha sued Robert for divorce. In her petition, Tasha alleged that she and Robert had seven children during their

---

[1] When the suit for divorce involves children, who are under eighteen or otherwise entitled to support, the petition for divorce must include a suit affecting the parent-child relationship, (SAPCR) unless the children are under the continuing jurisdiction of another court. Tex. Fam. Code Ann. § 6.406(b) (West 2006); *see also id*. § 101.032 (West 2014) (defining SAPCR as a suit "in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is requested"). The petitions for divorce before the trial court included SAPCR claims.

[2] Tasha represents herself in her appeal.

marriage. When Robert answered Tasha's suit, he counterclaimed for divorce and asked that the trial court name him as the sole managing conservator of the couple's children. In the counterclaim, Robert alleged that Tasha "has a history or pattern of committing family violence during the two-year period preceding the date of filing of this suit." He also suggested that should the trial court choose to give Tasha rights of visitation, that her visitation periods be supervised based on her past conduct involving violence. Robert attached several affidavits to his counterclaim. In one of them, he swore that Tasha had injured him and injured two of the children when they lived together as a family. According to the affidavit, during certain months in 2015, which Robert specified, Tasha harmed him by hitting and pushing him in front of the couple's children. Robert also swore that Tasha injured the couple's oldest and their third child by hitting, kicking or slamming doors on their hands.

In February 2017, the parties tried the contested issues to the bench. At that time, Robert's and Tasha's children were 17, 15, 13, 10, 8, 6 and 3 years old. Robert, Robert's father (Charles), and Tasha testified in the trial. During the trial, the trial court also questioned Anne, Stacy, and Samuel,[3] the couple's three older children, in chambers. The trial court's record shows that early in the bench proceeding, the

---

[3] To preserve the privacy of the children who are the subject of the trial court rulings, we refer to them by using pseudonyms rather than using their actual names. *See id.* § 109.002(d) (West Supp. 2018); Tex. R. App. P. 9.9.

trial court took judicial notice of the testimony from the hearing the trial court previously conducted on its temporary orders. The temporary orders also addressed the parties' rights to temporary custody and visitation before the date of the trial. The appellate record, however, contains only the transcript of the testimony of the witnesses who testified in the trial.[4] That said, the transcript from the trial contains some evidence supporting the trial court's conclusion that Tasha had acted violently in 2015 toward members of her family. And, there is some evidence in the trial that her conduct injured Robert, Anne, and Samuel. The testimony in the trial provides some support for the trial court's conclusion that Tasha injured members of the family while others, not directly involved in the altercations, were present.

During the trial, Robert explained that Tasha's behavior in 2015 prompted him to take the children and move from the family home. Ultimately, after leaving the home, Robert took the children with him to Florida to live there with his parents and his aunt. The transcripts of the interviews of Anne, Stacy, and Samuel provide

---

[4] The clerk's record reflects that the trial court conducted the hearing before issuing temporary orders in November 2016, around two and one-half months before the trial. In its temporary orders, the trial court appointed Robert and Tasha as joint managing conservators of their children. In the temporary orders, the trial court gave Robert the exclusive right to designate where the children lived and required that an adult supervise Tasha's visits. From the language in the temporary orders, it is clear the trial court was aware that Robert intended to move the children to Florida. The temporary orders altered Tasha's visitation rights when Robert moved the children to Florida.

additional support for the trial court's conclusion that Tasha damaged Anne's and Samuel's physical and emotional well-being before they moved from the family home.

When the trial ended, the trial court appointed Tasha and Robert as joint managing conservators. The court also gave Robert "the exclusive right to designate the primary residence of the children without regard to geographic location[.]" As to Tasha, the court gave her the right to possess the children once a month, on weekends, so long as Robert lived more than 100 miles away. If Robert and Tasha live closer than 100 miles away, the decree allows Tasha to possess the children on the first and third weekend of each month. While the weekend provisions relevant to living more than 100 miles apart vary from the weekend provisions in standard possession orders, the remaining periods—spring break, Thanksgiving, and Christmas—track the provisions in standard possession orders.[5] The trial court's possession order also requires that Tasha's first three possessory periods occur under supervision and allows Tasha's three oldest children to choose whether to attend any visits.

---

[5] *See* Tex. Fam. Code Ann. §§ 153.312, 153.313 (West 2014).

Analysis

*Sufficiency Issues*

Four of Tasha's issues, namely issues one, two, three, and five, contend the evidence the trial court considered fails to support the trial court's resolution of the disputed issues. Robert argues the evidence in the record is sufficient to support the trial court's decisions. He also argues the evidence of family violence justified the trial court's decision to deviate from the possessory rights in a standard order.

We review complaints about a trial court's conservatorship order in an appeal for abuse of discretion.[6] A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles.[7] Under an abuse-of-discretion standard, legal and factual insufficiency claims in family law cases are not analyzed as independent grounds of error. Instead, how well the evidence in the proceeding supports the court's resolution of custody issues is but one of the factors relevant to an appellate court's review of a claim alleging the trial court's rulings constitute an abuse of discretion.[8]

---

[6] *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

[7] *See Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

[8] *Id.*; *In re S.T.*, 508 S.W.3d 482, 489 (Tex. App.—Fort Worth 2015, no pet.).

When reviewing challenges to the decisions trial courts make in bench trials, appellate courts do not have the benefit of observing the witnesses testify. Consequently, trial courts are "'in the best situation to observe the demeanor and personalities of the witnesses and can 'feel the forces, powers, and influences that cannot be discerned by merely reading the record.'"[9] When the trial court acts as the factfinder in the trial, it determines the weight to give any testimony and resolves any conflicts in the testimony that came into evidence during the trial.[10]

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."[11] In reviewing challenges made in appeals that seek to overturn a trial court's best-interest finding, we consider public policy, as expressed in the Texas Family Code.[12] As to those policies, section 153.001 of the Family Code states:

> [t]he public policy of this state is to: (1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child; (2) provide a safe, stable, and nonviolent environment for the child; and (3) encourage parents to

---

[9] *In re N.A.S.*, 100 S.W.3d 670, 673 (Tex. App.—Dallas 2003, no pet.) (quoting *In the Interest of T.*, 715 S.W.2d 416, 418 (Tex. App.—Dallas 1986, no writ)).

[10] *Chavez v. Chavez*, 148 S.W.3d 449, 457 (Tex. App.—El Paso 2004, no pet.).

[11] Tex. Fam. Code Ann. § 153.002 (West 2014); *see also In re J.A.H.*, 311 S.W.3d 536, 541 (Tex. App.—El Paso 2009, no pet.).

[12] *See Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002).

share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.[13]

The Family Code also states that a court should prefer to allow the children of a marriage to remain together in periods the trial court establishes for their possession.[14] When reviewing a trial court's best-interest finding, we consider the nine non-exhaustive, best-interest factors identified by the Texas Supreme Court in *Holley v. Adams*.[15]

These considerations do not, however, prevent a trial court from allowing a parent, with the trial court's permission, to relocate the children of the marriage to

---

[13] Tex. Fam. Code Ann. § 153.001(a) (West 2014).

[14] *Id*. § 153.251(c) (West 2014).

[15] In *Holley*, the Texas Supreme Court applied these factors in reviewing a best-interest finding:

> • the child's desires;
> • the child's emotional and physical needs, now and in the future;
> • the emotional and physical danger to the child, now and in the future;
> • the parenting abilities of the parties seeking custody;
> • the programs available to assist the parties seeking custody;
> • the plans for the child by the parties seeking custody;
> • the stability of the home or the proposed placement;
> • the parent's acts or omissions, which may indicate that the existing parent-child relationship is improper;
> • any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

another state.[16] The trial court's decision to extend permission must nonetheless be in the child's best interest, providing the children "a safe, stable, and nonviolent environment" where they will be raised.[17]

The evidence admitted during the trial in this case addresses the conditions the children were living in when they lived together as one family in Texas and the conditions they live in after moving to Florida. The testimony also addressed Robert's and Tasha's respective capabilities and resources to provide for and care for the children. In Florida, the children are all being educated in a home-school environment, much like the education they were receiving when they lived with Tasha and Robert as a family in Texas. The members of Robert's extended family live in Florida, and the testimony shows the children benefit significantly from the additional care that the members of Robert's extended family provide him to raise seven children. The evidence allowed the trial court to conclude the home Robert made for the children in Florida is safe and stable. In contrast, the testimony shows that Tasha has had several jobs since she and Robert separated. Tasha has no extended family in Texas to help her with the task of raising seven children on her

---

[16] *Lenz*, 79 S.W.3d at 14 (noting the Family Code has "no specific statute governing residency restrictions or their removal for purposes of relocation").

[17] *Id*. at 16.

own. Tasha stated that she wished her children could be educated at home, but she acknowledged that if the court made her the parent who designated where they lived, she would need to enroll them in public school and have babysitters so that she could work outside the home. According to Robert, he allows the children to talk with Tasha when they want to. Tasha has visitation rights under the final decree, as it allows Tasha to have unsupervised visitation on various weekends after completing three supervised visits.

The testimony relevant to Tasha's relationship with her older children played a significant role in the trial court's resolution of the disputed issues. But the record before us does not include the transcript from the temporary-orders hearing. At the beginning of trial, the trial court took judicial notice that it would consider both the testimony from the temporary-orders hearing and the testimony in the trial in resolving the dispute. Thus, the trial court clearly relied on testimony that is not before us in this record to resolve the matters Tasha is complaining about in her appeal.

Under the Texas Rules of Appellate Procedure, a party who properly designates some of the reporter's record may appeal without a complete record, and the appellate court must presume the incomplete record is complete for purposes of

the appeal.[18] Appealing a case on less than a complete appellate record, however, requires that the party who appeals on a partial record to follow the requirements in Rule 34.6(c) of the Appellate Rules before the appellate court will presume the appeal contains everything needed to resolve the issues in a brief.[19] Tasha did not file a complete record to support her appeal, so we do not have the benefit of all of the testimony the trial court considered in resolving the dispute. Because Tasha did not comply with the Appellate Rules by designating a partial record for her appeal, we must presume the testimony in the temporary-orders hearing supports the manner the trial court decided the conservatorship issues that Tasha complains about in her brief.[20]

Tasha discounts the weight the trial court should have given testimony that she caused injuries to some of her family members. But when weighing evidence, the factfinder may choose to believe or disbelieve any testimony that is admitted during the trial.[21] As the factfinder in this trial, the trial court had the responsibility

---

[18] Tex. R. App. P. 34.6(c)(4); *Tull v. Tull*, 159 S.W.3d 758, 761 (Tex. App.— Dallas 2005, no pet.).

[19] *See Tull*, 159 S.W.3d at 761.

[20] *Id.*

[21] *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

to decide which witnesses were telling the truth and to weigh how important the testimony was to the issues in dispute.[22] On a partial reporter's record, we cannot conclude the trial court's resolution of the disputed fact issues was unreasonable.[23]

Tasha also complains that the evidence about her conduct was not relevant to the trial court's resolution of the disputed facts. We disagree. In family law cases, the Legislature instructs trial courts to consider whether a party engaged in a history or pattern of family violence in deciding who to appoint as a child's conservator.[24]

We conclude that Tasha has failed to establish that insufficient evidence supports the trial court's judgment. We overrule Tasha's first, second, third, and fifth issues.

---

[22] *Id.*

[23] *See id.*, 168 S.W.3d at 813-14 (explaining that a reviewing court cannot view evidence contradictory to the verdict in isolation).

[24] The Family Code requires trial courts to consider whether, either before the suit was filed or while the suit was pending, "a party engaged in a history or pattern of family violence[.]" Tex. Fam. Code. Ann. § 153.005(c)(1) (West Supp. 2018). "Family violence" is defined by the Family Code as "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault[.]" *Id.* § 71.004(1) (West Supp. 2018).

Interviews of Children

In issue four, Tasha argues the trial court erred by failing to interview her ten-year old child and to rely on the accounts that her three oldest children provided in resolving the dispute. When parties elect to try a family law case involving issues of possession to the bench, the Legislature requires that trial courts conduct in-chambers interviews of children, twelve or older, upon a party's request.[25] If the child is less than twelve, however, a trial court *may* (*but is not required*) to interview the child, even if a party or attorney involved in the case asks for the interview.[26]

Here, nothing in the record shows that anyone ever asked the trial court to interview Tasha's ten-year old child. Moreover, nothing in the record shows that Tasha lodged any objection when the trial court did not interview that child.

Under Texas law, a party must generally follow the rules of error preservation to preserve a party's right to complain about alleged errors that may occur in a trial.[27]

---

[25] *See id*. § 153.009(a) (West 2014).

[26] *Id*. (emphasis added).

[27] *See* Tex. R. App. P. 33.1 (preserving error for appellate review requires the complaining party to show that she presented her complaint to the trial court in a timely request, objection, or motion, and to establish that the trial court ruled on her request).

Tasha failed to preserve the complaint she has raised in issue four for our review.[28]

## Conclusion

Having overruled all Tasha's issues, we affirm the final decree of divorce.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on May 30, 2018
Opinion Delivered March 21, 2019

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[28] *See* Tex. R. App. P. 33.1(a)(1); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) (explaining that to preserve error, the party raising the complaint must establish that it made the trial court aware of the party's complaint promptly and that the party obtained a ruling on its complaint).